UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ROGELIO MEDINA, : | |
|     Plaintiff, : | |
| : | |
| v. : | CASE NO. 3:15-cv-1371 (VLB) |
| : | |
| ALLISON BLACK, et al., : | |
|     Defendants. : | |

**RULING DENYING DEFENDANTS' MOTION TO DISMISS**

Plaintiff Rogelio Medina, currently incarcerated at the Cheshire Correctional Institution in Cheshire, Connecticut, has filed this action *pro se* against Defendants Warden Allison Black; Deputy Wardens Kimberly Jones and Denise Walker; Counselor Ciarlo; Lieutenants Cox, Allen, and Brown; and Correctional Officers LaRosa, Denis, Martinez, Campoli, Cummings, Blocker, and Reid.  He asserts claims for retaliation, deliberate indifference to his safety, failure to protect him from harm, and denial of equal protection of the laws.

Under 28 U.S.C. § 1915A, a court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief.  In reviewing a *pro se* complaint, a court must assume the truth of the allegations and interpret them liberally to "raise the strongest arguments [they] suggest[ ]." *Abbas v. Dixon,* 480 F.3d 636, 639 (2d Cir. 2007).  Detailed allegations are not required, but the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based.  *See Bell Atlantic v. Twombly*, 550 U.S. 544,

555–56 (2007).  Conclusory allegations are not sufficient.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  However, "'[a] document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'"  *Boykin v. KeyCorp.*, 521 F.3d 202, 214 (2d Cir. 2008) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)).  This Court conducted an initial review applying this standard.  In its September 21, 2015 Initial Review Order, this Court held that this complaint sufficiently stated plausible claims for failure to protect, deliberate indifference, denial of equal protection, and retaliation.

Defendants now move to dismiss the complaint for failure to state a claim.  The Court already considered and rejected these arguments in its Initial Review Order.  A motion to dismiss challenging an initial review is effectively a motion for reconsideration, which must satisfy the Federal Rule of Civil Procedure 60 standard by showing that the Court, *inter alia*, overlooked an issue, a material fact on the record, or binding precedent.  *See Manon v. Hall*, No. 3:14-CV-1510 (VLB), 2015 WL 8081945, at *3 (D. Conn. Dec. 7, 2015).  Applying this heightened standard gives meaning to 28 U.S.C. § 1915A while preserving a defendant's right to assert defenses under Rule 12.  It also fosters the just, speedy, and efficient resolution of the dispute.  *See* Fed. R. Civ. P. 1.  Defendants' motion is DENIED for the reasons stated below.

### I. Facts

Applying the plausibility standard articulated above, by accepting the factual allegations as true and liberally construing the complaint, the Court construes Medina's complaint to allege the following facts. The plaintiff was transferred to Bridgeport Correctional Center from Cheshire Correctional Institution after he filed a lawsuit against Correctional Officer Arthur Whitehead. The plaintiff was confined in protective custody at the Bridgeport Correctional Center at all times relevant to this action.

Upon his arrival at Bridgeport Correctional Center, the defendants permitted other inmates to bully, harass, intimidate, threaten and provoke fights with the plaintiff in an attempt to get him to withdraw the lawsuit. The plaintiff complained about these actions to defendants Black, Jones, Walker, Cox, Allen and Brown. His complaints were ignored. When the defendants toured the housing unit, inmates would report to the results of their threats and harassment to the defendants. Defendants LaRosa, Martinez, Campoli, Cummings and Reid called the plaintiff a "snitch" in the presence of other inmates, causing those inmates to call the plaintiff "out to fight because of it." Doc. #1 at 6, ¶ 9. The defendants encouraged the inmates to continue the threats and harassment.

The plaintiff sets forth several examples of this harassment. On November 21, 2014, several legal documents were taken from the plaintiff's cell while he was at the gym. Other inmates knew which documents were missing. The plaintiff had no cellmate. He states that correctional officers took the documents or

permitted other inmates to do so.  The plaintiff reported the incident to defendant Cox but received no reply.

On December 25, 2014, defendant Martinez called the plaintiff a "snitch" during his tour of the housing unit.  While recording the incident, defendant Campoli referred to the plaintiff as a "snitch" and told him to stop suing.  The plaintiff reported this incident to defendant Jones but received no response.

On January 21, 2015, while in the shower, the plaintiff overheard Deputy Warden Vasquez state that his legal mail had been stopped.  The plaintiff did not receive any mail from the state courts or his attorney for four months.  He reported the incident to defendant Black.  A counselor supervisor responded that his allegations were unfounded.

On six occasions between January 27, 2015, and January 30, 2015, inmates from the housing unit verbally harassed the plaintiff about his crime, called him a "snitch" and threatened to fight with him or harass him until he dropped his lawsuit.  Defendant LaRosa encouraged inmates to keep up the harassment to get the plaintiff to drop the lawsuit and seek to leave the housing unit.  Another correctional officer encouraged inmates to tell him if the plaintiff agreed to fight or threatened them so the officer could issue the plaintiff a disciplinary report.  Inmates told the plaintiff that everyone was going to continue threatening him until he dropped the lawsuit and that if he reported misconduct he would be beaten.  The plaintiff reported all of these incidents to defendant Allen.  He received no reply.

On January 28, 2015, defendant Martinez called the plaintiff a "snitch" and offered $50.00 to any inmate who punched the plaintiff in the mouth. The plaintiff reported this incident to defendant Jones. He did not receive a reply.

On February 4, 2015, an inmate told defendant Cox in reference to the plaintiff that "we gottem shook." Doc. #1 at 8, ¶ 26. Defendant Cox told the inmate to continue his efforts. Later in the day, defendant LaRosa told an inmate that the plaintiff was a "snitch." On February 6, 2015, defendant La Rosa announced in the dining hall that it would take someone punching the plaintiff in the face to get him to stop snitching and stated that this would happen if the plaintiff reported on defendant LaRosa. The plaintiff reported these incidents to defendant Jones. He received no reply.

From February 4, 2015, through May 2015, the plaintiff's laundry was returned to him unwashed. He had to wash his clothing by hand without soap. He overheard defendant Blocker telling other inmates to let the pedophile wash his own clothes. The plaintiff complained but received no reply.

On February 6, 2015, an inmate woke the plaintiff and told him to stop reporting. The inmate knew that the plaintiff had reported defendant LaRosa's conduct. On February 18, 2015, an inmate called the plaintiff out to fight because defendant Martinez had told the inmate that the plaintiff was a snitch. The inmate stated that if the plaintiff reported the incident, the inmate would throw hot water on the plaintiff. The plaintiff reported these incidents but received no reply.

On February 22, 2015, another inmate tried to start a fight with the plaintiff

5

because the plaintiff had reported the inmate's prior conduct.  The inmate states that defendants Campoli and Martinez had told him that the plaintiff was a "snitch."  The plaintiff reported this incident.

On March 30, 2015, defendant LaRosa stood by the plaintiff's cell door an announced that the plaintiff had molested his children and was afraid to fight.  The other inmates used this information to try to provoke fights with the plaintiff.  The plaintiff reported this incident to defendant Walker but received no response.  The same day, the plaintiff overheard defendant Brown state that he was afraid to leave his cell and if the other inmates persisted, they would drive him from the housing unit.  The plaintiff reported the statement to defendant Jones.  He received no reply.

On April 18, 2015, defendant Denis allowed the inmates to congregate in the tier outside the plaintiff's cell.  The inmates were so loud that the plaintiff was unable to do his legal work.  He was threatened with a beating if he did not stop working.  Defendant Allen did not respond to the plaintiff's complaint regarding this conduct.

On April 24, 2015, defendant Reid stated that he would not open the plaintiff's cell door unless he admitted he was a snitch.  The plaintiff complained about this conduct to defendant Black.  She did not reply.

## II. Standard of Review

When considering a motion to dismiss filed pursuant to Rule 12(b)(6), Fed. R. Civ. P., the court accepts as true all factual allegations in the complaint and

draws inferences from these allegations in the light most favorable to the plaintiff. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Flores v. Southern Peru Copper Corp.*, 343 F.3d 140, 143 (2d Cir. 2003). The court considers not whether the plaintiff ultimately will prevail, but whether he has stated a claim upon which relief may be granted so that he should be entitled to offer evidence to support his claim. *See York v. Association of Bar of City of New York*, 286 F.3d 122, 125 (2d Cir.), *cert. denied*, 537 U.S. 1089 (2002).

In reviewing the complaint in response to a motion to dismiss, the court applies "a 'plausibility standard,' which is guided by two working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). First, the requirement that the court accept as true the allegations in the complaint "'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal,* 556 U.S. at 678). Second, to survive a motion to dismiss, the complaint must state a plausible claim for relief. Determining whether the complaint states a plausible claim for relief is "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). Even under this standard, however, the court liberally construes a *pro se* complaint. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *Boykin v. KeyCorp*, 521 F.3d 202, 213-14, 216 (2d Cir. 2008).

7

### III.  Discussion

The plaintiff asserts claims for retaliation, deliberate indifference to safety, denial of equal protection and failure to protect him from harm.  The defendants contend that the plaintiff fails to state any cognizable claims for violation of his rights under the First and Eighth Amendments or the Equal Protection Clause of the Fourteenth Amendment.

A.   Retaliation

A plaintiff asserting a First Amendment retaliation claim must demonstrate that his speech or conduct was protected, the defendants took adverse action against him, and there was a causal connection between the adverse action and the protected speech or conduct.  *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003).  The plaintiff also must show that the defendants were aware of the protected speech or conduct.  *Pavone v. Puglisi*, 353 F. App'x 622, 625 (2d Cir. 2009).

The plaintiff alleges that he filed a lawsuit against a correctional officer at Cheshire Correctional Institution.  Filing a lawsuit is protected conduct.  *See Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995) ("Prisoners, like non-prisoners, have a constitutional right of access to the courts and to petition the government for the redress of grievances, and prison officials may not retaliate against prisoners for the exercise of that right.").  The plaintiff alleges that defendants Campoli and LaRosa specifically stated that their actions were taken to get the plaintiff to withdraw the lawsuit and that the other defendants were aware that he had filed the lawsuit.  These allegations are sufficient to demonstrate the

defendants' awareness.  Further, temporal proximity between the protected activity and the adverse action can support a causal connection between the protected activity and the allegedly retaliatory conduct.  *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009) ("A plaintiff can establish a causal connection that suggests retaliation by showing that the protected activity was close in time to the adverse action").  The plaintiff alleges that he was transferred to Bridgeport Correctional Center after he filed the lawsuit and that the defendants' conduct commenced upon his arrival.

The adverse action by the defendants must "deter a similarly situated inmate of ordinary firmness from exercising his or her constitutional rights…." *Davis*, 320 F.3d at 353.  It need not necessarily deter the plaintiff.  General comments and verbal abuse are insufficient to constitute adverse action.  *See, e.g., id.* (sarcastic comments are not retaliatory conduct); *King v. McIntyre*, No. 9:11-CV-1457, 2015 WL 1781256, at *20-21 (N.D.N.Y. Apr. 8, 2015) (statement that plaintiff would "have a hard time here" if he continued to write complaints considered too vague to constitute adverse action); *Bartley v. Collins*, No. 95 Civ. 10616, 2006 WL 1289256, at *6 (S.D.N.Y. May 10, 2006) ("verbal threats such as 'we going to get you, you better drop the suit,' do not rise to the level of adverse action").  Depending on context, more specific threats may constitute adverse action.  *See King,* 2015 WL 1781256 at *21; *Barrington v. New York*, 806 F. Supp. 2d 730, 746 (S.D.N.Y. 2011) (verbal threats can constitute adverse action even if they do not rise to level of Eighth Amendment violations if sufficiently direct and

specific).

The plaintiff does not allege that the defendants made isolated vague threats. He alleges that they engineered a concerted effort to get other inmates to assault and threaten the plaintiff until he withdrew the lawsuit. Upon initial review, this Court concluded that the plaintiff's allegations stated a plausible claim for retaliation. The defendants' argument has not altered the Court's view that the allegations are more than vague statements. The defendants' motion to dismiss the retaliation claim is denied.

B.   <u>Deliberate Indifference to Safety and Failure to Protect</u>

The Court considered these claims together in the Initial Review Order. To state claims for failure to protect and deliberate indifference to safety, the plaintiff must allege facts showing that he was incarcerated under conditions posing a substantial risk of serious harm, and that the defendants acted with deliberate indifference to that risk and the plaintiff's safety. *Farmer v. Brennan*, 511 U.S. 825, 836 (1994). The plaintiff must demonstrate that the defendants actually knew of and disregarded an excessive risk of harm to the plaintiff's health and safety. *Id.* at 837. The defendants must be aware of the facts from which the inference can be drawn that a substantial risk of serious harm exists, and the defendants must draw that inference. *Id.* In determining whether the plaintiff faced an excessive risk of serious harm, the courts "look at the 'facts and circumstances of which the official was aware at the time he acted or failed to act.'" *Hartry v. City of Suffolk*, 755 F. Supp. 2d 422, 436 (E.D.N.Y. 2010) (citation omitted). The

focus of the court's inquiry should be on the existence of a substantial risk of serious harm, rather than the actual injuries suffered in an attack. *Farmer*, 511 U.S. at 837.

The plaintiff alleges that the defendants instigated the threats against him by calling him a snitch in front of other inmates and offering a bounty if another inmate would attack him. Supervisory defendants were made aware of these actions and ignored them. These allegations clearly show that the defendants were aware of, and disregarded, an excessive risk to the plaintiff's health and safety. Thus, upon initial review, this Court concluded that the plaintiff stated cognizable claims for failure to protect and deliberate indifference to safety.

The defendants contend that the plaintiff fails to state a claim because he suffered no injury. They argue that the lack of injury is favorable to them as it shows that they ensured the plaintiff's safety and did not intentionally subject him to a substantial risk of harm. The Supreme Court has held, in addressing a request for injunctive relief, that "a prisoner seeking 'a remedy for unsafe conditions [need not] await a tragic event [such as an] actua[l] assaul[t] before obtaining relief.'" *Farmer*, 511 U.S. at 845. The Second Circuit has suggested that threats or credible rumors could be sufficient to support a failure to protect claim. *See Dawes v. Walker*, 239 F.3d 489, 494 (2d Cir. 2001) (affirming dismissal of failure to protect claim where plaintiff did not allege that he had been assaulted by other inmates, but noting that plaintiff had not alleged that he had been threatened by other inmates or that there were credible rumors of an assault on

11

him), *overruled on other grounds*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002).

The plaintiff alleges that the defendants themselves were inciting other inmates to attack the plaintiff and even offered a bounty for any inmate who attacked him. This alleged conduct is the antithesis of protecting the plaintiff from harm. That no inmate accepted the offer does not demonstrate that the defendants did not subject the plaintiff to a substantial risk of harm--particularly where, as here, the plaintiff was threatened repeatedly and those threats prompted him to lodge several unavailing complaints. The defendants' motion is denied as to the failure to protect and deliberate indifference to safety claims.

C.      Equal Protection

The defendants first consider equal protection claims filed pursuant to 42 U.S.C. § 1981. They content that the plaintiff fails to state a cognizable equal protection claim because he fails to allege that he was discriminated against because of his race. The plaintiff has not asserted a section 1981 claim in his complaint. His equal protection claim is based on the Fourteenth Amendment which does not require a racial component to every equal protection claim. Thus, this argument is misplaced.

A violation of the Equal Protection Clause under the Fourteenth Amendment requires "that '(1) the person, compared with others similarly situated, was selectively treated; and (2) … such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish

12

the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'"  *Platt v. The Incorporated Village of Southampton*, No. 08-CV-2953(JS)(ARL), 2009 WL 3076099, at *8 (E.D.N.Y. Sept. 21, 2009) (quoting *Crowley v. Courville*, 76 F.3d 47, 52-53 (2d Cir. 1996) (citation omitted)).

The plaintiff alleges that the defendants singled him out and targeted him for harassment and threats because he filed a lawsuit against a correctional officer.  The Court concluded that the allegations were sufficient to state a plausible equal protection claim.  The defendants' motion to dismiss is denied on this ground.

D.   <u>Failure to Exhaust Institutional Remedies</u>

The defendants move to dismiss on the ground that the plaintiff failed to exhaust his institutional remedies before commencing this action.  The defendants correctly state that an inmate must fully exhaust his institutional remedies before commencing a lawsuit in federal court.  *Woodford v. Ngo*, 548 U.S. 81, 85 (2006).  However, the Court cannot determine whether the plaintiff has exhausted his institutional remedies at this time.

The case is before the Court on a motion to dismiss.  The Court's review is confined to the allegations in the complaint and matters of which judicial notice may be taken.  *See Garanti Finansal Kiralama A.S. v. Aqua Marine and Trading Inc.*, 697 F.3d 59, 63 n.4 (2d Cir. 2012) (when considering a motion to dismiss under Rule 12(b)(6), the Court considers only the allegations in the amended complaint and matters of which judicial notice may be taken).

13

The plaintiff alleges that he wrote to various defendants about the incidents underlying the complaint and attaches one inmate request he submitted to defendant Black. He does not allege that this was his only attempt to exhaust administrative remedies and is not required to address exhaustion in his complaint. The defendants have identified no matters of which the Court may take judicial notice regarding whether the plaintiff exhausted his institutional remedies on the claims asserted in this action. Thus, the Court cannot address the issue at this time. The defendants' motion to dismiss is denied on this ground.

E.    <u>Other Eighth Amendment Claims</u>

In addition to the claims identified by the plaintiff, the defendants argue that the plaintiff fails to state cognizable Eighth Amendment claims for unconstitutional conditions of confinement based on the lack of laundry services for three months, verbal abuse or harassment, and deprivation of legal papers and mail. The plaintiff included these allegations as examples of retaliatory conduct. He did not assert an Eighth Amendment conditions of confinement claim or a First Amendment claim for denial of access to the courts and the Court has not construed the complaint to assert such claims. Accordingly, the defendants' motion to dismiss such claims is denied as moot.

## IV.  Conclusion

The defendants' motion to dismiss [Doc. #12] is DENIED.  The case will proceed in accordance with the Scheduling Order entered on January 26, 2016.

IT IS SO ORDERED.

                                                    /s/
                                      Vanessa L. Bryant
                                      United States District Judge

Dated in Hartford, Connecticut on February 1, 2016.